HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BRENT A. YOUNG,<br><br>        Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, in her capacity as Acting Commissioner of the Social Security Administration,<br><br>        Defendant. | CASE NO. C13-957RAJ<br><br>ORDER |

## I.  INTRODUCTION

This matter comes before the court on the Report and Recommendation ("R&R") (Dkt. # 18) of the Honorable Brian A. Tsuchida, United States Magistrate Judge, along with Plaintiff Brent A. Young's objection (Dkt. # 19) to the R&R. The court has considered the R&R, the objection, the Commissioner's response,[1] the briefs the parties submitted to Judge Tsuchida, and the Administrative Record ("AR"). For the reasons stated below, the court declines to adopt the R&R, GRANTS Mr. Young's objection, REVERSES the January 2012 decision of the administrative law judge, and REMANDS this action to the Social Security Administration ("SSA") for further proceedings consistent with this order.

---

[1] The court's consideration of the Commissioner's response did not take long. That one-page response cited no portion of the R&R, no portion of the Administrative Record, and merely "refer[red] this Court to Defendant's Opening Brief/Memorandum and Magistrate Judge Tsuchida's Report and Recommendation."  Dkt. # 20.

ORDER – 1

## II. BACKGROUND

Mr. Young had serious complications from a sinus surgery in December 2004. By February 2005, he was hospitalized and comatose, suffering from acute meningitis. He had sinus surgery again in March 2005.

There is no dispute that Mr. Young suffered a brain injury as a result of his surgical complications. There is no dispute that he had cognitive deficits as a result of that injury. Perhaps because of those deficits, or perhaps for other reasons, he suffered from depression for years following his surgery. The dispute in this case is to what extent his cognitive disabilities and depression made him unable to work from December 2004 to April 2009.

Mr. Young did not work following his surgery until April 2009, when he began working as a resource manager for a real estate developer. Before his surgery, he worked with family members to manage successful a number of local "ServPro" franchises.

Everyone agrees that Mr. Young changed dramatically after his surgery. Putting aside the physical difficulties arising from his surgery and its complications (including several periods of hospitalization and several days comatose in the intensive care unit), he exhibited many cognitive deficits, including poor memory and inability to focus enough to complete routine tasks. He was frequently fatigued and had diffuse joint pain. His mood changed as well, with both he and his family reporting anger, irritability, lack of energy, and a lack of motivation. He slept poorly at night and was unable to make it through many days without napping. He alternated between periods of intense physical activity and periods of lethargy.

Mr. Young's medical records reflect these symptoms. Although he saw medical providers frequently, his most focused efforts at addressing his difficulties came in consultations with a team of providers at the University of Washington's brain injury clinic. Those providers included Dr. Kathleen Bell, a physician specializing in rehabilitative medicine, Dr. Kristy Sherman, a rehabilitative psychologist, Karen Ball, a

ORDER – 2

rehabilitative counselor, and Dr. Mary Pepping, a neuropsychologist. He was first evaluated by that team in March 2006, and continued treatment for several months. He discontinued treatment with that team after several months, but started again in September 2007 and continued treatment at least through the beginning of his new job in April 2009. The treatment notes reflect that Mr. Young suffered from several moderate cognitive impairments as well as depression that ranged from moderate to severe. With time and treatment, Mr. Young's condition improved, although those improvements were not always linear. Although his treatment providers sometimes observed his failure to follow through on their recommendations, none of them ever suggested that he was malingering, that his reporting of symptoms was incredible, or that he did not genuinely want to treat his problems.

Mr. Young applied for disability benefits, claiming he was unable to work in the period between his December 2004 surgery and the new job he began in April 2009. After a December 2009 hearing, an initial decision from an administrative law judge ("ALJ") and an administrative remand, Mr. Young had a second hearing before an ALJ in December 2011. In January 2012, the ALJ issued a decision concluding that Mr. Young was not disabled. AR 11-22.

Mr. Young appealed that decision. The R&R recommends that the court deny his appeal. For the reasons stated below, the court declines to adopt that recommendation and instead reverses the ALJ's decision and remands this case to the SSA for further proceedings consistent with this order.

### III.  ANALYSIS

**A.  Standard of Review**

The R&R accurately summarizes the standard of review applicable to the ALJ's decision. Briefly, where "substantial evidence" supports an ALJ's factual finding, the court generally must affirm it. *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1222 (9th Cir. 2009) ("Substantial evidence means more than a mere scintilla but less than a

ORDER – 3

preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation omitted).  In certain circumstances, such as when an ALJ rejects a claimant's testimony about the severity of her impairments, a higher standard applies.  *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (requiring "specific, cogent reasons" for rejecting claimant's testimony, and "clear and convincing evidence" where there is no evidence of malingering).  The court does not defer to the ALJ's legal conclusions.  *Bray*, 554 F.3d at 1222.  The court reviews a magistrate judge's R&R de novo.  Fed. R. Civ. P. 72(b)(3).

The R&R also accurately summarizes the five-step process for determining whether an applicant is disabled.  *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).  An applicant is disabled if, for a period of sufficient duration, she can perform neither her past relevant work nor any other work available in the national economy.  In the first step, the applicant must show that she did not engage in substantial gainful activity during a relevant time period.  If she did, then she is not disabled.  If she did not, then the claimant must show at the second step that she has a "severe impairment" that limits her ability to work.  20 C.F.R. § 404.1520(c).  If so, she must show at the third step that over the course of at least a year, her impairment "meets or equals" an impairment listed in applicable regulations.  If it does, she is disabled.  If not, the ALJ must determine, between step three and step four, the applicant's residual functional capacity ("RFC"), which is an assessment of the applicant's "ability to work after accounting for her verifiable impairments."  *Bray*, 554 F.3d at 1222-23.  The applicant must demonstrate at step four that her RFC is such that she cannot perform her past relevant work.  *See* 20 C.F.R. § 404.1520(f) (noting that an applicant who can perform past relevant work is not disabled).  If she cannot, then the burden shifts to the SSA to demonstrate that her RFC permits her to perform other jobs that exist in substantial numbers in the national economy.  *See Bray*, 554 F.3d at 1223 (describing allocation of burdens in five-step process).

ORDER – 4

**B. The Court Must Remand Because the ALJ Did Not Accurately Describe Mr. Young's RFC to the Vocational Expert.**

The ALJ determined that Mr. Young had not engaged in substantial gainful activity during his period of disability, that the complications of his surgery and meningitis, plus his pain, depression, and anxiety, were all severe impairments, and that none of those impairments met or equaled a listed impairment. No one challenges those rulings on appeal.[2]

The court's concerns begin at the ALJ's assessment of Mr. Young's RFC. To make that assessment, the ALJ disregarded not only Mr. Young's assessment of his ability to work, but the assessments of all of his treating medical providers. The court will later address whether the ALJ had a basis to disregard that evidence. For now, the court follows the ALJ's approach, and affords weight only to two evaluations that non-treating health care specialists performed shortly after Mr. Young applied for disability benefits in late 2007. One of those evaluations was a January 2008 physical capacities evaluation from David Bennett, which Dr. Norm Staley, M.D., confirmed in March 2008. AR 727-734, 843. No one has challenged that evaluation, which essentially concluded that Mr. Young was capable of light work with a restriction on working at height or near hazards. The other evaluation was a January 2008 "Mental Residual Functional Capacity Assessment" from Dr. Edward Beaty, a psychologist, which another psychologist, Dr. Mary Gentile, confirmed without comment in March 2008. AR 709-12, 842. Dr. Beaty opined that Mr. Young had moderate limitations in the "ability to understand and remember detailed instructions," the "ability to carry out detailed instructions," the "ability to maintain attention and concentration for extended periods," the "ability to complete a normal work-day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and

---

[2] The ALJ acknowledged, but did not decide, a dispute over whether Mr. Young's receipt of substantial income from his family business in 2005, 2006, and 2007 was an indication of substantial gainful activity or a basis to make deductions from a disability award. AR 13-14. No one has asked the court to address that dispute in this appeal, and the court suggests no opinion on it.

ORDER – 5

length of rest periods," the "ability to accept instructions and respond appropriate to criticism from supervisors," and the "ability to set realistic goals or make plans independently of others." AR 709-10. In all other areas, Dr. Beatty assessed Mr. Young as not significantly limited. His written assessment noted that Mr. Young's "concentration for extended periods may be limited at times due to fatigue and focus concerns, as well as persistence and pace." AR 711. He also stated that Mr. Young could "understand, remember and carry out at least non-complex instructions," and that he might be capable of understanding "more routine complex [instructions]."

Dr. Beaty's evaluation was the only evaluation of Mr. Young's mental capacities that the ALJ afforded any weight; yet the ALJ did not accurately relay that evaluation to the vocational expert at the December 2011 hearing. The ALJ asked the expert to assume that Mr. Young could "understand at least . . . basic one- to two-step instructions," a condition that appears consistent with Dr. Beaty's evaluation. AR 53. But the ALJ also asked the expert to assume that the individual "would have average or moderate ability to perform sustained work activities [over] the expected 40-hour workweek . . . ." *Id.* The expert identified two jobs available in significant numbers in the national economy that Mr. Young could perform with those limitations. AR 54. The ALJ then asked the expert to further assume that Mr. Young "lack[ed] the ability to perform sustained work activities and would probably experience periods when [he] would not be able to attend the worksite or have to leave the worksite . . . [a]nd, as a consequence of that, it would probably add up to [him] missing at least six to eight hours out of the expected 40-hour workweek." AR 55. Applying that additional restriction, the expert could identify no jobs that Mr. Young could perform. *Id.*

The first error in the ALJ's colloquy with the vocational expert is that he asked the expert to assume an "average or moderate ability to perform sustained work activities" over a normal workweek. Although the ALJ did not explain what "average" meant in this context, it is unlikely at best that the "average" worker has all of the "moderate"

ORDER – 6

limitations that Dr. Beaty identified in his evaluation. That is probably clear from the plain meaning of the words. Even if it were not, the SSA's instructions for completing the Mental Residual Functional Capacity Assessment form state that the "Moderately Limited" boxes that Dr. Beaty checked on the form mean that "the evidence supports the conclusion that the individual's capacity to perform the activity is impaired." POMS DI 24510.063(B)(2).[3] If the ALJ properly assessed that a person with 6 (out of 20) moderate limitations is an "average" worker, the record contains no support for that assessment. Yet the ALJ equated "moderate" with "average" when asking the ALJ to determine if Mr. Young could work.

The second error, closely related to the first, is that the ALJ did not accurately convey all of Mr. Young's limitations to the vocational expert. The SSA instructs people completing its Mental Residual Functional Capacity Assessment form to describe the "degree and extent" of any "moderate" limitation in narrative format. POMS DI 24510.063(B)(2). Dr. Beaty provided a somewhat more detailed narrative assessment of Mr. Young's ability to follow instructions and of his "ability to maintain attention and concentration for extended periods. AR 711. He did not, however, explicitly elaborate on his assessment that Mr. Young had "moderate" limitations on his "ability to complete a normal workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." AR 711. But that limitation critical, as the vocational expert explained. If Mr. Young needed to be absent or unable to work for six or eight hours from the average workweek, he could not work at all. The ALJ did not distinguish between the "average" worker and the "moderately limited" worker in this regard. To accurately convey Dr. Beaty's evaluation, the ALJ needed to convey this "moderate" limitation to the vocational

---

[3] The SSA's Program Operations Manual System ("POMS") contains several provisions relevant to Form SSA-4734-F4-SUP, which is the Mental Residual Functional Capacity Assessment that Dr. Beaty filled out. Those provisions, at DI 24510.060 to DI 24510.090, are available at http://policy.ssa.gov/poms.nsf/lnx/0424510060.

ORDER – 7

expert.[4]  If Dr. Beaty's evaluation did not provide a sufficient basis to describe that "moderate" limitation to the vocational expert, then the ALJ erred in relying solely upon that evaluation.  As the court will later discuss, there was substantial evidence in the record assessing Mr. Young's ability to sustain work consistently.

The ALJ's inaccurate or incomplete hypothetical questions to the vocational expert mandate a reversal of the ALJ's decision.  An ALJ must propose hypothetical questions to a vocational expert that include all limitations for which there is substantial support in the record.  *Robbins v. SSA*, 466 F.3d 880, 886 (9th Cir. 2006).  ("[I]n hypotheticals posed to a vocational expert, the ALJ must only include those limitations supported by substantial evidence. . . .  Conversely, an ALJ is not free to disregard properly supported limitations.").  Where the record suggests that "a proper hypothetical . . . would have been determinative as to the vocational expert's recommendation to the ALJ," the court must reverse.  *Id.*

## C.     The Proceedings Following Remand Must Address at Least Three Concerns.

Because the court must remand for the reasons stated above, the court need not necessarily decide whether Mr. Young correctly identifies other errors in the ALJ's assessment of the evidence.  The court will not limit the SSA's (including a future ALJ's) consideration of the evidence on remand.  The court now identifies several concerns that the SSA (or a future ALJ) must address on remand.

First, all parties must acknowledge in subsequent proceedings the limited period for which Mr. Young seeks disability benefits and the reasons for that limited period.  The parties and the ALJ too frequently speak of Mr. Young's period of disability without recognition of the uncontroverted evidence explaining why he only seeks a limited period of disability benefits.  There can be no serious dispute that Mr. Young was profoundly

---

[4] It is not clear from the transcript of the hearing that the vocational expert was aware what "moderately limited" means in the context of the SSA's Mental Residual Functional Capacity Assessment form.  If remand results in an another hearing before an ALJ, the ALJ must clarify what "moderately limited" means if he or she uses that term.

ORDER – 8

limited in the near-term aftermath of his sinus surgeries.  He acquired meningitis, suffered a brain injury, and was comatose.  There also can be no serious dispute that Mr. Young gradually (although not always linearly) improved in the aftermath of that injury.  All of his treatment records reflect sharp limitations earlier in the period of disability, followed by decreasing limitations with time and treatment.  Yet the ALJ and the parties often cite evidence from the very end of his period of disability as if it reflects his condition for the entire period.  The ALJ, for example, found Mr. Young incredible in part because a treatment note from February 2009 (AR 851) stated that he had applied for hundreds of jobs.  AR 18.  The ALJ mentioned that note without acknowledging that it came just two months before Mr. Young's claimed period of disability ended when he began a new job.  Similarly, the ALJ found Mr. Young "less disabl[ed] than he has contended" because a March 2009 chart note showed that his mood and mental functioning had improved with a new medication.  AR 18.  That same chart note mentioned that Mr. Young had accepted the very job that marked the end of his claimed period of disability.  AR 844.  Mr. Young's improvement at the end of his claimed period of disability is no reason to discredit his testimony that he was previously more sharply impaired.  By the same token, however, Mr. Young ought to realize that his claim that he was wholly disabled until the very moment he began a new job is highly suspect.  He ought to consider whether to claim a shorter period of disability on remand.

Second, the court concurs with the R&R to the extent it suggests that the ALJ erred in discounting evidence from Ms. Ball and Dr. Sherman.  The ALJ discounted Ms. Ball's evidence because, among a detailed list of functional restrictions, she also opined that Mr. Young was unable to work.  The ALJ need not defer to her ultimate conclusion of disability, but the fact that she reached that conclusion is no reason at all to discount her testimony about Mr. Young's limited functioning during the fifteen or so months that she treated him as part of a team of brain injury rehabilitation specialists.  As to Dr. Sherman, a psychologist specializing in brain injury rehabilitation has ample basis to

ORDER – 9

opine on a patient's functional limitations.  The ALJ disregarded specific evidence from her about those limitations merely because she was not a vocational expert.  That was error, as the R&R observed.

Third, putting aside the period of profound limitation immediately following Mr. Young's surgery, the crux of this case is whether Mr. Young could work regularly in the aftermath of the brain injury that resulted from that surgery as well as the depression that accompanied his recovery from that injury.  Mr. Young's testimony (amplified by the testimony of several lay witnesses, most notably his wife) was that he could not sleep properly or sustain work for at least a substantial portion of the period he claimed to be disabled.  If the SSA wishes to disregard that testimony, it needs a much more substantial basis than the ALJ identified.

## IV.  CONCLUSION

For the reasons stated above, the court declines to adopt the R&R (Dkt. # 18), GRANTS Mr. Young's objection (Dkt. # 19), REVERSES the ALJ's January 2012 decision, and REMANDS this action to the Social Security Administration for further proceedings consistent with this order.

The clerk shall enter judgment for Mr. Young and ensure that Judge Tsuchida receives notice of this order.

DATED this 17th day of June, 2014.

The Honorable Richard A. Jones
United States District Court Judge

ORDER – 10